J-A03029-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| SHEILA DEVINE AND DUSTIN DEVINE, HER HUSBAND | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellants | |
| v. | |
| WENDY L. LAWRENCE | |
| Appellee | No. 1023 MDA 2016 |

Appeal from the Judgment Entered June 13, 2016
In the Court of Common Pleas of Lancaster County
Civil Division at No: CI-12-14996

BEFORE: LAZARUS, J., STABILE, J., and DUBOW, J.

MEMORANDUM BY STABILE, J.:                    **FILED APRIL 20, 2017**

Appellants, Sheila Devine and Dustin Devine, her husband, appeal from the June 13, 2016 judgment entered in the Court of Common Pleas of Lancaster County. Appellant Sheila Devine ("Mrs. Devine") and Appellee Wendy L. Lawrence were involved in an automobile accident for which Appellee admitted fault. A jury awarded Appellants $5,225.87 in medical expenses but nothing for pain and suffering. Appellants therefore seek a new trial. We affirm.

The trial court summarized the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On Friday, November 19, 2010, [Appellee] was in her car directly behind [Mrs. Devine] in stop and go traffic. [Mrs.] Devine brought her car to a stop and, Lawrence, not paying attention, hit her from behind. [Mrs.] Devine testified that,

though her car moved just a little bit on impact, the airbag did not go off, she was throw forward into her seatbelt, and her laptop bag, CDs, and a tissue box went onto the floor of the car. She got out of her car and spoke to [Appellee] who admitted she had been distracted. [Mrs.] Devine stated that [Appellee] told her she had been traveling approximately 35 to 40 miles per hour prior to the collision.

The collision failed to do any damage to [Mrs.] Devine's car other than a small crack to the bumper. While [Mrs.] Devine described the car damage as 'a big dent kind of thing and it was cracked and pushed in and then there was a scratch along the other side that went with it,' [Appellee's] Exhibit 1 shows no such damage to the car. [Mrs.] Devine further testified that as a result of the collision her car needed the airbag test, lighting wires reconnected, and an alignment. No documentary proof of any repairs was submitted in the trial. The parties remained at the scene for approximately 15 minutes and exchanged information. No one called the police and no one required emergency medical care.

[Mrs.] Devine continued home and reported the accident to her boss. She also took Advil for her soreness. On Sunday, two days later, [Mrs.] Devine went to the emergency room where she was treated and released with a prescription for anti-inflammatory medication. She went to work the next day, Monday, and did not remember whether going to work caused her any problems. While never missing work, [Mrs.] Devine began to complaint of tenderness and pain in her neck and back so she sought treatment from her family doctor.

When she did not improve, [Mrs.] Devine treated with her employer's doctors and Concentra a little more than a week after the accident. She testified that she was still having problems in her neck, back and where the seatbelt contacted her chest. She continued to be prescribed anti-inflammatories. Concentra ordered MRI scans and directed Devine to physical therapy at Hershey Orthopedics & Spine where she learned stretches to loosen her muscles. She treated with Concentra doctors for three to six months and denied that physical therapy improved her condition. In December 2010, [Mrs.] Devine complained to Dr. Robert Gray of Concentra, of head pain and occasional tingling in her fingers and feet. In February 2011, she complained to Dr. Brings Vic at Hershey of face pain, numbness,

and constant tingling in her arms and legs as well as trouble with weakness and balance. There was a gap from February 2011 until May 2011 in [Mrs.] Devine's treatment that she attributed to her employer's schedule.

In May 2011, [Mrs.] Devine began treating at Hershey with pain management doctors. In August 2011, she began treating at Rehab Options with Tara Morrett. Her employer accommodated [Mrs.] Devine to participate in the Rehab Option program that included aqua therapy and seeing a chiropractor, Dr. Penny Koval. Dr. Koval, again assisted [Mrs.] Devine with learning to stretch. She testified that this helped the pain in her neck and back and where her body had contacted the seatbelt. At some point, she began to wake up in the middle of the night and experience headaches in the morning. In the fall of 2011, nearly a year after the accident, she was prescribe [sic] an H-wave machine by Dr. Penny of Rehab Options, to stimulate her muscles. During this time she also began massage therapy and began taking over the counter medications to manage her pain. [Mrs.] Devine complained of numbness and tingling in her shoulder area extending to her fingertips. In late 2011, [Mrs.] Devine also began treating with Dr. Everett Hills.

In August 2012, [Mrs.] Devine returned for a reevaluation at Rehab Options because she was still having pain and she testified the pain was getting worse. Rehab Options recommended that Devine participate in their daily program lasting for two months. After arranging this with her employer, she began the program on October 3, 2012. The Rehab Options daily program retrained [Mrs.] Devine to do many daily activities to reduce strain on her back and to realign joints like a chiropractor would. [Mrs.] Devine testified that she improved 30 to 35% with the help of the Rehab Options program, but that two years after the accident, she was still experiencing back and neck pain. However, also in the fall of 2012, [Mrs.] Devine was again hit from behind in a Wal-Mart parking lot.

At some point, [Mrs.] Devine was placed on a Flector patch by Dr. Hills to manage her pain. She placed the patch in the area where she was experiencing the most pain. [Mrs.] Devine testified that the patch helped her. Other than anti-inflammatories [Mrs.] Devine has never been prescribed a narcotic or opiate painkiller. After completing the Rehab Options program in December 2012, Devine continued to treat monthly

with Dr. Koval and every three to six months with Dr. Hills. [Mrs.] Devine testified that she was treated for six to eight months in 2003 for neck problems but denied any lingering issues. She also admitted to an auto accident in 2000 for which she suffered back and neck pain and an incident when lifting a box that caused back pain. [Mrs.] Devine also sought treatment for lower back pain in March 2001, for back pain in January 2005, and neck pain in May 2009. She admitted to having issues with headaches and migraines prior to the 2011 accident.

Doctor Everett Hills, M.D., testified that there was no correlation between the MRI studies and findings and [Mrs.] Devine's complaints of pain in her head, face, and spine. He also stated that though [Mrs.] Devine complained of constant and intense pain, which she rated as nine out of ten, her physical examination was unremarkable.

Trial Court Opinion, 8/17/2016, at 1-4 (record citations omitted).

This case proceeded to a two-day jury trial on May 16-17, 2016. Appellants moved for a new trial after the jury returned a verdict covering Mrs. Devine's medical expenses but not pain and suffering. The trial court denied the motion. This timely appeal followed. The sole issue before us is whether the trial court erred in denying a new trial based on the jury's failure to award damages for pain and suffering. Appellant's Brief at 5.

Our Supreme Court has set forth the applicable standard of review:

In reviewing an order denying a motion for a new trial, an appellate court should not set aside a trial court's decision unless the trial court's decision was an abuse of discretion. A new trial should be granted only where the verdict is so contrary to the evidence as to shock one's sense of justice [and not] where the evidence is conflicting [or] where the trial judge would have reached a different conclusion on the same facts.

We have held that it is the duty of the trial court to control the amount of the verdict; it is in possession of all the facts as well as the atmosphere of the case, which will enable it to do

more evenhanded justice between the parties than can an appellate court. Thus, a jury verdict is set aside for inadequacy when it appears to have been the product of passion, prejudice, partiality, or corruption, or where it clearly appears from uncontradicted evidence that the amount of the verdict bears no reasonable relation to the loss suffered by the plaintiff. Hence, a reversal on grounds of inadequacy of the verdict is appropriate only where the injustice of the verdict [stands] forth like a beacon.

*Davis v. Mullen*, 773 A.2d 764, 766 (Pa. 2001) (internal citations and quotation marks omitted).

When determining whether the trial court abused its discretion, the appellate court must confine itself to the specific reasons given by the trial court for its ruling. An appellate court may reverse the trial court's decision only if it finds no basis on the record to support the reasons offered by the trial court. If support for the decision of the trial court is found in the record, the order must be affirmed.

*Zeigler v. Detweiler*, 835 A.2d 764, 767 (Pa. Super. 2003).

The *Davis* Court held that an award of past medical expenses without an accompanying award for pain and suffering "should not be disturbed where the trial court had a reasonable basis to believe that […] the jury did not believe the plaintiff suffered any pain and suffering." *Davis*, 773 A.2d at 767. The *Davis* Court synthesized two lines of cases, one in which courts reversed awards of medical damages without accompanying pain and suffering as "totally inadequate," (*see id.* at 767-68) and another line in which courts held that awards of pain and suffering need not necessarily accompany awards of past medical expenses (*see id.* at 768-69).

Regarding the former line of cases, the Supreme Court wrote:

A jury may not eliminate pain from wounds when all human experience proves the existence of pain, […] as the result of the negligence which they, the jury, have adjudicated against responsible defendant.  When it is apparent that a jury by its verdict holds the defendant responsible for a whole loaf of bread, it may not then capriciously cut off a portion of that loaf as it hands it to the plaintiff.

*Id.* at 767 (quoting *Todd v. Bercini*, 92 A.2d 538, 539 (Pa. 1952)).  As to the latter line of cases, the Supreme Court offered the following observation:

[Juries] are not to be faulted ... if they do not believe all they are told and all that their common experience does not accept.  That is not to say, they may disregard an obvious injury.  It is, however, to say that they are not obliged to believe that every injury causes pain or the pain alleged.

*Id.* at 768 (quoting *Boggavarapu v. Ponist*, 542 A.2d 516, 518 (Pa. 1988)).

The record before us contains conflicting evidence, as the trial court acknowledged, but we cannot conclude the jury disregarded an obvious injury.  As the trial court noted, Mrs. Devine drove herself home from the accident and did not seek immediate treatment.  Contemporaneous photographs of her vehicle did not corroborate her account of the damage to her vehicle.  Further, as the trial court noted, Mrs. Devine rated her pain as high as nine on a scale of one to ten, but her medical records contain little or no objective evidence of injury.  That is, her doctors based their diagnosis and treatment on her subjective complaints.  *See* Trial Court Opinion, 8/17/2016, at 7.  We find support in the record for the trial court's decision,

and we conclude that the trial court had a reasonable basis to conclude the jury disbelieved Mrs. Devine's allegations of pain and suffering.

Appellee's expert, Dr. David Hely, found little or no objective evidence to support Mrs. Devine's alleged injury. Rather, the diagnoses of her injury were based on her subjective complaints. The record reflects that the emergency room doctors who treated Mrs. Devine two days after the accident diagnosed a cervical strain or sprain. N.T. Deposition, 5/6/2016, at 14. According to Dr. Hely, the emergency room x-rays of Mrs. Devine's neck and lower back were normal. *Id.* One of the radiologists noted a "lordosis," which Dr. Hely explained as finding that can be related to the patient's head position during the x-ray. *Id.* at 32, 36. Dr. Hely conceded that a lordosis would be consistent with a cervical strain or sprain. *Id.*

A subsequent orthopedic evaluation in February of 2011 revealed no objective support for Mrs. Devine's complaints. *Id.* at 15. Likewise, subsequent MRIs did not reveal any objective causes for Mrs. Devine's pain. *Id.* at 16, 20. Dr. Hely's own physical examination of Mrs. Devine, in October of 2013, showed no deformity in her neck or back. *Id.* at 22. Dr. Hely opined that Mrs. Devine "may have sustained a muscle strain or a ligamentous sprain to the neck and low back in the accident." *Id.* at 26. Such an injury would ordinarily resolve in six months. *Id.* at 26, 39.

Dr. Hely agreed that the records of the emergency room and Mrs. Devine's subsequent treatments documented a cervical sprain or strain, and

that the treatment Mrs. Devine received was appropriate for that condition. *Id.* at 37-38.  Dr. Hely agreed that a sprain or strain can cause pain.  *Id.* at 39.  Dr. Hely further opined that "[t]here are no objective findings in the record, by any of the other doctors or on the imaging studies or on my examination, to explain all of the symptoms which she is continuing to have."  *Id.* at 26.

Ultimately, the jury limited its award to six months of medical expenses.  We conclude that Dr. Hely's testimony provides a reasonable basis for the verdict.  In summary, Dr. Hely conceded that Mrs. Devine "may have" suffered a strain or sprain that "can" cause pain.  Dr. Hely did not testify that any injury Mrs. Devine suffered definitely would have caused pain.  Dr. Hely also described the dearth of objective evidence to explain Mrs. Devine's symptoms—during the initial six months or afterwards.  From this, the jury could reasonably find that Mrs. Devine's account of her pain and suffering was not credible.  Nothing in the record required the jury to find that Mrs. Devine suffered compensable pain at any time following the accident.  The jury could have concluded that any pain stemming from the accident was a mere "transient rub of life for which compensation is not warranted."  *Kaufman v. Campos*, 827 A.2d 1209, 1211 (Pa. Super. 2003), *appeal denied*, 839 A.2d 352 (Pa. 2003).

Appellants cite several cases awarding new trials where a jury failed to award damages for pain and suffering.  None of them governs the result in

this case. For example, in **Marsh v. Hanley**, 856 A.2d 138 (Pa. Super. 2004), this Court awarded a new trial where the plaintiff proved a cervical and lumbar strain but the jury awarded no compensation for pain and suffering. There, the plaintiff was transported by ambulance from the accident scene to a hospital, was discharged wearing a soft collar, was unable to work for a period of time due to her injuries, and, most importantly "both parties' experts conceded that [the plaintiff] suffered soft tissue injuries." **Id.** at 139. The **Marsh** court noted that "[l]ike in [**Burnhauser v. Bumberger**, 745 A.2d 1256 (Pa. Super. 2000)] the instant case involved more than a minor rear end collision." **Id.** at 140. The facts of **Marsh** are plainly distinguishable. Instantly, the experts do not agree on the nature and extent of Mrs. Devine's injury, she received no emergency treatment, and the jury could have found the accident to be a minor rear end collision.

Appellants also cite **Burnhauser**, wherein the defendant drove over the centerline and hit the plaintiff's oncoming vehicle. **Burnhauser**, 745 A.2d at 1257, 1257-58. As in **Marsh**, the plaintiff was transported from the accident scene to the emergency room by ambulance. **Id.** at 1258. The experts agreed that the plaintiff sustained injuries. **Id.** We reasoned that the injuries involved normally involve pain and suffering. **Id.** at 1261.

**Burnhauser** is distinguishable for much the same reasons as **Marsh**. As we have already noted, Dr. Hely said that Mrs. Devine "may have"

sustained an injury that "can" cause pain. Dr. Hely did not concede that Mrs. Devine did suffer an injury or that the injury would certainly cause pain. Nothing required the jury to find that Mrs. Devine suffered compensable pain. Indeed, the objective medical evidence does not explain or support Mrs. Devine's ongoing claims of significant pain, and the jury could have disbelieved her account of her pain and suffering. The trial court had a reasonable basis to believe the jury found no compensable pain and suffering.[1]

Given the facts of record, the applicable law, and the standard governing our review, we have no basis upon which to disturb the trial court's order denying a new trial.

Judgment affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/20/2017

_____

[1] The parties also disputed whether the jury could have found that Mrs. Devine's pain stemmed from a prior condition. Given our analysis in the main text, we need not address that issue.